**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Harry Alberti, et al., | ) | No. CV10-08031-PCT-NVW |
| Plaintiffs, | ) | **ORDER** |
| vs. | ) | |
| Oracle Healthcare LLC, et al., | ) | |
| Defendants. | ) | |

Pending before the Court is Plaintiffs' Motion to Remand to State Court (doc. #8), which the Court grants.

**I.  Background**

According to the First Amended Complaint, Plaintiffs Harry Alberti, M.D., and Celeste Correa, M.D., husband and wife, are physicians licensed to practice medicine in the State of Arizona, and regularly practice medicine in Yavapai County, Arizona. Defendant Osborne Group, LLC, is an Arizona Limited Liability Company with its principal place of business in Yavapai County. Osborne Group transferred all of its debts and assets to Defendant Oracle sometime in April 2008, and therefore there is no meaningful difference between Oracle and Osborne Group.

On or about May 28, 2009, Oracle entered into a Medical Practice Asset Purchase Agreement with Alberti-Correa Family Medicine, negotiated through its CEO, Defendant Osborne. At the same time, Oracle entered into a three-year employment contract with

Alberti and Correa, to start on July 1, 2008. Oracle promised, among other things, to purchase Alberti and Correa's patient records and maintain them in compliance with applicable law, to provide professional liability insurance to Alberti and Correa, and to assume liability for certain debts accrued by Alberti-Correa Family Medicine.

Alberti and Correa left their employment with Oracle on June 12, 2009. On January 15, 2010, Alberti and Correa brought suit in the Arizona Superior Court for the County of Yavapai asserting numerous state-law claims. Alberti and Correa alleged that Oracle breached the parties' agreements by, among other things, failing to tender wages to Alberti and Correa, failing to assume liability for debt accrued by Alberti-Correa Family Medicine, and by failing to maintain Alberti and Correa's patient records in compliance with applicable law. Alberti and Correa also brought various state-law tort claims for invasion of privacy through appropriation of name and likeness, negligence, and intentional conduct, in connection with Oracle's alleged use of Alberti and Correa's personal information, such as names, social security numbers, personal financial information, and National Provider Identifiers[1] (NPIs), to write prescriptions, take out loans, and bill federal and state healthcare agencies for various services after Alberti and Correa left Oracle's employ and without their knowledge and consent.

Three of Alberti and Correa's claims concern the unauthorized use of their NPI numbers. Specifically, in Count 10 of the First Amended Complaint, Alberti and Correa allege that around December 2, 2009, well after Alberti and Correa ended their employment relationship with Oracle, a patient of Oracle was given a prescription that was purportedly issued "per order of Celeste M Correa MD at 12/2/2009" and that included Correa's NPI number. Alberti and Correa claim that Oracle used their names and NPI numbers without their consent, and thus invaded their privacy by appropriating their names and likenesses. In Count 11, Alberti and Correa allege that Oracle breached its duty to act with reasonable

---

[1] A National Provider Identifier is a unique number that is used by a healthcare provider to identify itself in certain transactions, such as writing prescriptions and billing for services provided. *See* 45 C.F.R. §§ 162.402-162.414 (2010).

care in conducting its medical practice by using their names and NPI numbers without their authorization. In Count 12, they allege that Oracle was negligent per se in using their NPI numbers without their consent.

On February 18, 2010, Defendants removed Alberti and Correa's suit to federal court. On March 3, 2010, Alberti and Correa moved to remand to state court on the ground that there is no federal subject matter jurisdiction. It is undisputed that the parties are not diverse. The only question before the Court is whether there is federal-question jurisdiction under 28 U.S.C. § 1331. Defendants admit that federal law does not create any of the causes of action plead by Alberti and Correa. Instead, Defendants maintain that the Court has federal-question jurisdiction because Alberti and Correa seek to hold Defendants liable in tort for the unauthorized use of their NPI numbers.

## II. Analysis

District courts have federal-question jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A defendant may remove a case to federal court only if the case could have been brought there originally. 28 U.S.C. § 1441(b). A case arises under federal law for § 1331 purposes only if a federal question is presented on the face of the plaintiff's well-pleaded complaint. *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 690 (2006). "[T]he vast majority of cases brought under the general federal-question jurisdiction of the federal courts are those in which federal law creates the cause of action." *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 808 (1986). However, in certain cases, federal-question jurisdiction will lie over state-law claims that implicate substantial questions of federal law. *Grable & Sons Metal Prods. Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). "The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Id.* In deciding whether there is federal-question jurisdiction, courts must consider whether the state-law claim necessarily raises a stated federal issue, actually disputed and

substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities. *Id.* at 315.

Defendants' attempt to invoke federal-question jurisdiction is clearly foreclosed by Supreme Court precedent. Indeed, as *Empire Healthchoice* explains, only a "special and small category of cases" that do not qualify as a "cause of action created by federal law" nevertheless "arise under federal law" for § 1331 purposes because federal law is a necessary element of the plaintiff's claim for relief. 547 U.S. at 699. *Empire Healthchoice* concerned a private insurer that sought reimbursement for a federal employee's medical expenses paid under a government contract. *Id.* at 687-88. The Federal Employees Health Benefits Act of 1959 (FEHBA) authorized the United States Office of Personnel Management (OPM) to negotiate and regulate health-benefit plans for federal employees. *Id.* at 682-83. The insurer contracted with OPM to provide health insurance benefits to federal employees. *Id.*

The administrator of the estate of a deceased former plan enrollee who had been injured in an accident brought a tort suit in New York state court against third parties who had allegedly caused the decedent's injuries. *Id.* at 687-88. That suit was eventually settled for a substantial sum. *Id.* The insurer, invoking § 1331, then filed suit in federal district court to recover from the settlement the amount it had paid for the decedent's medical care. *Id.* The insurer and *amicus* United States maintained that the insurer's reimbursement claim, arising under the contract, stated a federal claim because Congress intended all rights and duties stemming from the contract to be federal in nature. *Id.* at 690. The Court first held that the state-law reimbursement claim did not qualify as a cause of action created by federal law. *Id.* at 699. Then, distinguishing *Grable*, 545 U.S. 308, the Court held that there was no substantial and disputed federal issue for § 1331 purposes. *Id.*

*Grable* involved real property which the Internal Revenue Service (IRS) seized to satisfy a federal tax deficiency. *Id.* Grable & Sons Metal Products (Grable) received notice of the seizure by certified mail before the IRS sold the property to Darue Engineering & Manufacturing (Darue). *Id.* Five years later, Grable sued Darue in state court to quiet title, alleging that Darue's record title was invalid because the IRS had conveyed the seizure

- 4 -

notice improperly. *Id*. at 700. Grable maintained that the governing statute, 26 U.S.C. § 6335(a) required personal service, not service by certified mail. *Id.* Darue removed the case to federal court alleging that Grable's claim of title depended on the interpretation of the statute. *Id*. The Court held that removal was proper because the meaning of the federal tax provision was an important issue of federal law that belonged in federal court. *Id*. Whether Grable received adequate notice was an essential element of Grable's quite title claim and appeared to be the only issue contested in the case. *Id*.

The Court explained, however, that *Grable* and *Empire Healthchoice* were "poles apart." *Id*. In *Grable*, the dispute centered on the action of a federal agency (the IRS) and its compatibility with a federal statute. *Id*. The federal question at issue was "substantial," and its resolution "was both dispositive of the case and would be controlling in numerous other cases." *Id*. In contrast, in *Empire Healthchoice*, "the reimbursement claim was triggered, not by the action of a federal department, agency, or service, but by the settlement of a personal-injury action launched in state court, and the bottom line practical issue was the share of that settlement properly payable to Empire." *Id*. (citation omitted). Unlike the insurer's claim in *Empire Healthchoice*, *Grable* "presented a nearly 'pure issue of law,' one 'that could be settled once and for all and thereafter govern numerous tax sale cases.'" *Id*. Empire's reimbursement claim, in contrast, was "fact-bound and situation-specific." *Id*. at 701. Further, although there were "distinct[] federal interests" in *Empire Healthchoice* because reimbursements to the plan were credited to a federal fund and the master contract could be described as federal in nature, those interests did not warrant turning "into a discrete and costly 'federal case' an insurer's contract-derived claim to be reimbursed from the proceeds of a federal worker's state-court-initiated tort litigation." *Id*. at 696, 701.

Here, as in *Empire Healthchoice*, there is no "substantial" question of federal law that requires a federal forum. Alberti and Correa's claim is, essentially, that the use of their personal information without their consent violated state law. Defendants do not explain how this claim turns on a question of federal law, much less on a disputed and substantial one. Defendants do not contend, for example, that the unauthorized use of NPI numbers does

- 5 -

not violate federal law. In fact, although Defendants state that there is a substantial question of federal law that requires a federal forum, they do not attempt to articulate what that question is. Defendants only assert, rather vaguely, that a court will have to decide whether their conduct complied with applicable provisions of federal law regarding protected health information. However, as in *Empire Healthchoice*, this question, if ultimately presented, is one that is likely fact-bound and situation-specific. There is no "nearly pure question of law" for a federal court to decide, much less one that, once settled, is likely to govern the outcome of other cases.

Moreover, there is no federal interest in this case that warrants turning Alberti and Correa's state-law tort and contract litigation into a federal case. Defendants argue that there is a strong federal interest because NPI regulations are issued pursuant to the authority of the Department of Health and Human Services (HHS) and enforcement of the regulations is entrusted to HHS. *See* 42 U.S.C. § 1320d-2. But Defendants do not explain why the mere fact that a federal agency promulgates and enforces the federal regulations referenced in Alberti and Correa's complaint implies that a strong federal interest exists. Unlike *Grable,* in which the dispute centered on the action of a federal agency (the IRS), the action here, like the one in *Empire Healthchoice*, was triggered by a suit between private parties. In fact, the exercise of federal jurisdiction here is even less compelling than in *Empire Healthchoice* because the dispute here concerns a wholly private business relationship between private actors.

Defendants make no attempt to explain why "a proper federal-state balance" would bring Alberti and Correa's state tort claims based upon the unauthorized use of their NPI numbers "under the complete governance of federal law, to be declared in a federal forum." *See Empire Healthchoice*, 547 U.S. at 701. Defendants only state that, had Alberti and Correa wished to avoid federal court, they could have chosen to eliminate all NPI-related claims from their First Amended Complaint. However, Alberti and Correa need not avoid all reference to federal law to avoid federal jurisdiction. Any questions of federal law that

do not arise on the face of the well-pleaded complaint are fully within the competence of the Superior Court to decide if necessary in the adjudication of the case. *See id.*

Finally, there is a strong presumption against removal jurisdiction. *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). The removing party bears the burden of establishing subject matter jurisdiction as a basis for removal, and all ambiguities are resolved in favor of remand. *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009). Defendants have not carried their burden of establishing federal subject matter jurisdiction as a basis for removal.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Remand (doc. #8) is granted. The Clerk shall remand this action to the Arizona Superior Court, Yavapai County, for lack of subject matter and removal jurisdiction. The Clerk shall terminate this action.

DATED this 14th day of April, 2010.

_____
Neil V. Wake
United States District Judge